**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **WANDA ESCOBEDO**, *in her capacity as the Executrix of the Estate of Joseline Cuc*, et. al.*;* | ) | |
| Plaintiffs | ) | C.A. No. 06-502ML |
| vs. | ) | |
| **THE CITY OF PROVIDENCE,** et. al.**;** | ) | |
| Defendants | ) | |

**PLAINTIFFS' MOTION FOR LEAVE TO AMEND EXPERT DISCLOSURES**

Pursuant to Fed. R. Civ. P. 6(b) and 16 and DRI LR Cv 7, plaintiffs request leave to amend their expert disclosures within thirty days after defendants have produced all outstanding discovery in this case. As grounds for this motion, plaintiffs assert that they are substantially prejudiced by defendants' failure to provide discovery necessary for plaintiffs' experts to make complete disclosures conforming to Fed. R. Civ. P. 26.

The Court has ordered plaintiffs to make their expert disclosures by March 2, 2008. Plaintiffs will do so without the benefit of discovery defendants likely have within their custody or control. The reasons necessitating this request for leave fall squarely in the lap of defendants. Since serving discovery on defendants on January 22, 2007, plaintiffs have diligently sought the information required to properly prepare this case for trial and to enable their experts to make disclosures properly conforming to Fed. R. Civ. P. 26. After four motions to compel in less than a year, two hearings, and many written communications from plaintiffs, defendants continue to withhold information critical in this case.

In conjunction with this motion, plaintiffs have filed an accompanying fourth Motion to Compel Responses to Requests for Production of Documents.

**PLAINTIFFS HAVE DILIGENTLY SOUGHT ALL**
**OUTSTANDING DISCOVERY FROM DEFENDANTS**

Plaintiffs have diligently sought the discovery required by their experts and to properly prepare this case for trial. Plaintiffs served interrogatories and document requests on January 22, 2007. When defendants represented that they would not respond until at least April 20, 2007, plaintiffs filed their first Motion to Compel on April 6, 2007. Defendants then provided their initial discovery responses and represented that more would follow. For those reasons, plaintiffs informed the Court that the first Motion to Compel was essentially moot and no hearing was held.

Plaintiffs did not know at the time that defendants possessed additional documents which plaintiffs consider to be responsive to Plaintiffs' First Request for Production, or that they would change their position on providing answers to interrogatories from two of the defendants.

Because of the untimeliness of defendants' initial discovery responses, plaintiffs also filed a Motion to Enlarge Dates Set by Pretrial Order on April 6, 2007. The Court granted that motion, setting September 2, 2007, as the new expert disclosure date for plaintiffs.

In an attempt to meet the September 2, 2007, expert disclosure date, plaintiffs scheduled several depositions for the end of July, 2007. During the first deposition on July 26, 2007, of defendant Sey Sey Kamara, plaintiffs learned that additional investigation would be necessary in order to properly depose the subsequent witnesses. Plaintiffs also learned that defendants likely possessed additional documents responsive to Plaintiffs' First Request for Production. The remaining depositions were postponed and plaintiffs filed a second Motion to Enlarge Dates Set by Pretrial Order on August 2, 2007. The Court granted a six month enlargement, until March 2, 2008, for plaintiffs' expert disclosures. The Court also ruled that no further enlargements would be granted.

As a result of the July 26, 2007, deposition of Sey Sey Kamara, plaintiffs made a request to defendants on August 7, 2007, for documents which plaintiffs considered to be in the nature of a supplemental response to Plaintiffs' First Request for Production. On August 16, 2007, defendants represented that they would consider the document requests to be "formal and additional discovery...and provide you with answers and/or responses thirty days from today."

On August 17, 2007, plaintiffs asked for documents responsive to three additional categories and, in an effort to avoid court intervention on the nature of the requests, agreed with defendants' plan to provide responses in thirty days. Plaintiffs also informed defendants they would serve more formal document requests, if necessary. Defendants made no such request and the parties have referred to the requests made on August 7 and 17 as Plaintiffs' Second Request for Production of Documents.

When defendants did not respond in any manner to Plaintiffs' Second Request for Production, or to correspondence regarding the outstanding discovery, plaintiffs filed their second Motion to Compel on October 12, 2007. The Court held a hearing on this motion on November 16, 2007. As a result of that hearing, the Court ordered defendants to provide some additional documents and answers to interrogatories. Defendants also agreed to respond to plaintiffs' Second Request for Production and provide interrogatory answers from defendants Melody A. Johnson and Donnie Evans.

Plaintiffs wrote to defendants on November 20, December 7, and December 18, 2007, seeking this outstanding discovery. When defendants did not produce all that was required, plaintiffs filed their third Motion to Compel on January 11, 2008. Because of the looming expert disclosure date of March 2nd, plaintiffs requested an expedited hearing.

On January 30, 2008, the Court held a telephone hearing on plaintiffs' third Motion to Compel. As a result of that hearing, the Court ordered defendants to produce

additional information and instructed counsel for plaintiffs to inform the Court of any unresolved issues in this third Motion to Compel. Pursuant to those instructions from the Court, plaintiffs wrote to Magistrate Judge Almond on February 1, 2008, to report on discovery still outstanding at that time, specifically: (1) Defendants' Responses to Plaintiffs' Second Request for Production of Documents, to which defendants have provided a response to only three of the fourteen requests made by plaintiffs; and, (2) Answers to Interrogatories by Defendant Donnie Evans, which plaintiffs have still not received. In addition to those matters, an outstanding issue remains regarding production of defendants' personnel files.

On February 15, 2008, the Court issued an Order instructing the parties to further confer on these outstanding issues from plaintiffs' third Motion to Compel and report on their status by March 7, 2008, after plaintiffs have made their expert disclosures.

Before receiving the Court's February 15th Order, plaintiffs had already written to defendants on January 31, February 5, February 8, and February 15, 2008, regarding the matters still before the Court on plaintiffs' third Motion to Compel, as well as additional documents forming the basis for plaintiffs' fourth Motion to Compel in less than a year. Despite plaintiffs' efforts, defendants have not provided any additional documents or defendant Donnie Evans' interrogatory answers.

The existence of the documents sought by plaintiffs' accompanying fourth Motion to Compel came to light during the depositions of: (1) defendant Dinah Larbi on January 18, 2008; (2) defendant Diane Martin on January 30, 2008; (3) Bridgham Middle School vice-principal Vilai Or on February 6, 2008; and, (4) Providence School Department Nurse Administrator Donna O'Connor on February 11, 2008.

**THE RELEVANCE OF THE OUTSTANDING DISCOVERY AND**
**THE PREJUDICE TO PLAINTIFFS OF PROCEEDING WITHOUT IT**

**1. The Relevance of the Outstanding Discovery.**

Plaintiffs seek damages and declaratory judgment stemming from the alleged wrongful acts and omissions of defendants which caused the death of Joseline Cuc, ("Joseline"), a seventh grade student at the Samuel W. Bridgham Middle School, Providence, Rhode Island, on May 20, 2005.

Joseline died after becoming involved in a physical altercation in a classroom at the Bridgham Middle School and then being left alone by the staff at the school for at least 18 minutes. Joseline suffered heart failure in the hallway outside of her classroom and was found on the floor by a fellow student. Based on the deposition testimony of the school nurse, defendant Diane Martin, and the principal, defendant Diane Larbi, both knew of Joseline's heart condition.

Much of the outstanding discovery bears directly on these facts, with some of the most important examples being:

**a. Entries in the School Nurse's Log Book.**

Defendant Diane Martin, Joseline's school nurse at the Bridgham Middle School, testified at her January 30, 2008 deposition that Joseline came to see her twice before she died, one time for chest pains suffered in a classroom at the school and another time for what Ms. Martin termed "nausea." Medical records provided by Joseline's treating physician indicate Joseline saw Ms. Martin twice for chest pains before she died. Ms. Martin testified that she entered information into her medical "log book" for both of Joseline's visits.

Defendants produced one page from Ms. Martin's log book dated the day of Joseline's death. Defendants have not produced any other entries, even though Ms. Martin testified they still exist and she has provided them to "someone" other than plaintiffs. During

Ms. Martin's deposition, counsel for defendants instructed Ms. Martin not to answer any questions regarding whether she had provided the pages from her logbook to her attorneys.

Plaintiffs First Request for Production served on January 22, 2007 called for production of these type records, and plaintiff's Second Request for Production served on August 17, 2007, very clearly called for production of Ms. Martin's log entries. Despite a motion to compel, plaintiffs have yet to receive them.

**b. <u>Providence School Department Computer Based Medical Records on Joseline</u>.**

Ms. Martin testified at her January 30, 2008 deposition that she entered medical information concerning Joseline into a computer at the Bridgham Middle School. Knowledge of Joseline's life-threatening heart condition by the Providence School Department is a central issue in this case. Despite a motion to compel and numerous requests by plaintiffs, the defendants in this case have yet to provide this information.

Plaintiffs First Request for Production served on January 22, 2007 called for production of these types of records, and plaintiff's Second Request for Production served on August 17, 2007, very clearly called for production of Joseline's computer based medical records. Despite a motion to compel, plaintiffs have yet to receive them.

**c. <u>Meeting Minutes, Agendas, and Other Documents Regarding the Administration of Student Health Services for the Providence School Department from 2003 to the Present</u>.**

Ms. Martin testified she participated in the administration of Student Health Services for the Providence School Department in 2003 as a member of a four nurse team reporting to assistant superintendent Dr. Frances Gallo. One purpose of this team was to ensure that the Providence School Department complied with state and federal requirements concerning students, like Joseline, with serious health conditions. Ms. Martin testified that she resigned from the team three months after it formed because she felt the four nurse team was "not being

allowed to do the work that we needed to do" by the Providence School Department.

Ms. Martin testified that she believes written minutes of the meetings held with Dr. Gallo, as well as her written resignation from the team, exist. Donna O'Connor, the current nurse administrator for the Providence School Department, also a member of the four nurse team, testified at her February 11, 2008 deposition that written agendas for the meetings should exist. In addition, Ms. O'Connor testified that the School Department abolished a formal nurse-administrator position just before forming the four nurse team in 2003, but reestablished the position after Joseline Cuc's death.

The work the nurse teachers were "not being allowed to do" speaks directly to the health and emergency care policies and procedures in place, or not in place, in the School Department prior to Joseline's death. The circumstances surrounding the abolishment and reestablishment of the nurse-administrator position, and the reasons for Ms. Martin's resignation from the team, are likewise important. These subject matters impact directly on whether defendants were complying with the requirements of state and federal law concerning health plans, emergency plans, and students at risk of grave harm because of health conditions like Joseline's.

Plaintiffs requested these documents in general terms on January 22, 2007, in their First Request for Production, and in very specific terms after taking the deposition of defendant Diane Martin on January 30, 2008. Defendants have yet to respond in any manner.

**d. <u>Documents Concerning An Alleged Assault Suffered by Joseline on a School Bus Prior to Her Death</u>.**

Joseline Cuc's mother will testify that in October, 2004, two students assaulted Joseline while on a school bus traveling from the Bridgham Middle School to Joseline's bus stop. She will further testify that Joseline saw her cardiologist, Dr. Feit, the next day and that Dr. Feit observed a large bruise on the side of Joseline's face. When Dr. Feit learned that

Joseline sustained this injury on a school bus, he authored a warning letter indicating, among other things, that excessive physical contact could be life threatening to Joseline. The Providence School Department had a copy of this letter in its custody and control when Joseline died.

Joseline's mother will also testify that she met with the vice-principal at the Bridgham Middle School, Vilai Or, regarding the incident on the school bus and the heightened danger of such incidents created by Joseline's medical condition. Mrs. Cuc will testify that Mr. Or told her that because the incident occurred "off school grounds," the School Department could do nothing. At his February 8, 2008 deposition, Mr. Or testified he did not recall ever meeting with Mrs. Cuc, or anything about the incident. He also testified that if such an incident were reported to him, he would have documented it in writing. Clearly, documents generated concerning the school bus incident are probative on the issue of defendants' knowledge of Joseline's vulnerable health condition, and on the issue of School Department deviation from its own policies and state and federal requirements for the protection of students like Joseline.

Plaintiffs First Request for Production served on January 22, 2007 called for production of these type records, and plaintiffs' Second Request for Production served on August 17, 2007, very clearly called for production of these records.

**e. <u>Joseline Cuc's Bridgham Middle School "Wellness Journal" and Records Related to the Monitoring of Her Heart Rate.</u>**

The Providence School Department's mandated course of instruction for Bridgham Middle School 7th graders required that they keep a "Wellness Journal" and monitor their heart rates in conjunction with their physical health education classes. Given Joseline's heart condition, the information in these documents could shed important light on Joseline's health before her death, as well as defendants' knowledge of her condition.

Plaintiffs requested these documents in general terms on January 22, 2007, in

their First Request for Production, and in very specific terms on August 17, 2007. Despite a motion to compel, plaintiffs have yet to receive those log entries.

**2. <u>The Prejudice to Plaintiffs of Proceeding Without the Outstanding Discovery</u>.**

The importance of defendants' outstanding discovery responses is clear. Nursing and other medical information maintained by the Providence School Department on Joseline, documents related to Ms. Martin's testimony on "not being allowed to do the work that we needed to do," an alleged assault which prompted a warning letter from Joseline's doctor, among others, go to the heart of the issues in this case.

Plaintiffs have been forced to depose several defendants and other witnesses in this case, and postpone the deposition of another key witness until after the expert disclosure date, because records that defendants admit exist, or should exist, have not been produced. Plaintiffs took those depositions because of the March 2, 2008, expert disclosure date. The depositions confirm that documents that should be made available to plaintiffs' experts have not been produced. The outstanding documents, and testimony of witnesses who could be confronted with those documents, are central to plaintiffs' ability to prove their allegations and for plaintiffs' experts to properly form their opinions.

For these reasons, without leave to amend their expert disclosures within thirty days after defendants have produced all outstanding discovery in this case, plaintiffs' expert disclosures will necessarily suffer and defendants will gain an unfair advantage, despite plaintiffs' diligence.

**CONCLUSION**

The Court should afford plaintiffs leave to amend their expert disclosures.

Dated: February 26, 2008

/s/Michael W. Long______________

Michael W. Long, No. 5455
Attorney at Law, P.C.
Attorney for Plaintiffs
640 George Washington Highway
Lincoln, RI 02865
(401) 333-0310/(401) 333-0311 Fax

**CERTIFICATE OF SERVICE**

To:

Kevin F. Mchugh, Esq.
Sara A. Rapport, Esq.
City of Providence-Law Department
275 Westminster Street, Suite 200
Providence, RI 02903

I hereby certify that I electronically filed this Motion on the 26th day of February, 2008. This Motion is available for viewing and downloading from the Court's Electronic Case Filing system. Service on the above identified counsel of record will be effectuated by electronic means and by mailing first class mail, postage prepaid, to non-registered parties.

/s/Michael W. Long
Michael W. Long