**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **WANDA ESCOBEDO**, *in her capacity as the Executrix of the Estate of Joseline Cuc*, et. al.*;* | ) | |
| Plaintiffs | ) | C.A. No. 06-502ML |
| vs. | ) | |
| **THE CITY OF PROVIDENCE,** et. al.**;** | ) | |
| Defendants | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' OBJECTION TO MOTION OF DEFENDANTS FOR LEAVE TO AMEND DEFENDANTS' ANSWER TO THE COMPLAINT**

Defendants have moved to amend their Answer to assert an affirmative defense of Qualified Immunity: (1) more than eighteen months after filing their original Answer to the Complaint; (2) after the completion of virtually all written discovery in this case, including four motions to compel filed by plaintiffs; (3) after plaintiffs have provided their expert disclosures; and, (4) after plaintiffs have completed lengthy depositions of each of the defendants and other witnesses, excepting defendant Melody A. Johnson.

The only justification provided by defendants for the timing of their request is "oversight." That is not enough to overcome the dilatory conduct of defendants throughout the pendency of this litigation, or the substantial prejudice plaintiffs will suffer by being ambushed at this stage of the litigation. Based on their own actions, defendants have waived their right to assert Qualified Immunity.

**Plaintiffs' Case**

Plaintiffs seek damages and declaratory judgment stemming from the alleged wrongful acts and omissions of defendants resulting in the death of Joseline Cuc, ("Joseline"), a seventh grade student at the Samuel W. Bridgham Middle School, Providence, Rhode Island, on

May 20, 2005.

Indisputable evidence, derived from defendants' own documents and sworn deposition testimony, will prove that Joseline died after becoming involved in a physical altercation in a classroom at the Bridgham Middle School and then being left alone by the staff at the school for at least 18 minutes. This occurred despite the fact that the Providence School Department, Joseline's school nurse, and her principal knew Joseline suffered from a chronic, life-threatening heart condition. The defendants in this action took virtually no action to protect Joseline prior to her death.

Just as disturbing, indisputable evidence derived from defendants' own documents and sworn deposition testimony will show the Providence School Department, the school nurse, and Joseline's principal intentionally concealed from Joseline's parents, the public, and the Office of the Rhode Island Medical Examiner what really happened to Joseline prior to her death, conduct which carried over into this litigation.

**Defendants' Dilatory Conduct**

Plaintiffs filed suit in this action in Providence County Superior Court on October 31, 2006. Defendants removed the action and filed their original Answer in this Court on November 17, 2006.

Plaintiffs diligently sought discovery required to prepare this case for trial, serving initial interrogatories and document requests on January 22, 2007. When defendants did not provide any discovery at all by April 6, 2007, and represented that they would not until at least April 20, 2007, plaintiffs filed their first motion to compel.

In response to that motion, defendants provided initial discovery responses and represented that more would follow. For those reasons, plaintiffs informed the Court that their first motion to compel was essentially moot and no hearing was held. Plaintiffs did not know at

the time that defendants possessed hundreds of pages of additional responsive documents, or that they would change their position on providing answers to interrogatories from two of the defendants in this case. Because of the untimeliness of defendants' initial discovery responses, plaintiffs requested, and the Court granted, an enlargement of the initial expert disclosure date to September 2, 2007.

In an attempt to meet that new expert disclosure date, plaintiffs scheduled depositions for the end of July, 2007. During the first deposition of defendant Sey Sey Kamara on July 26, 2007, plaintiffs learned that additional investigation would be necessary and that defendants likely possessed additional documents responsive to plaintiffs' discovery requests. Again, plaintiffs were forced to seek an enlargement of the their expert disclosure date, this time until March 2, 2008. The Court granted plaintiffs' request, with the caveat that no further enlargements would be granted.

Over the ensuing months, defendants continued to withhold documents and interrogatory answers, forcing plaintiffs to file three additional motions to compel between October 12,2007, and February 26, 2008. In response to those motions and rulings of this Court, plaintiffs finally produced interrogatory answers from defendants Melody A. Johnson and Donnie Evans, and several hundred additional pages of documents. Defendants did not complete production of their long overdue discovery responses until March 25, 2008.

Pursuant to this Court's order, plaintiffs provided their expert disclosures to defendants on March 2, 2008. But, defendants' dilatory conduct also necessitated an accompanying Motion for Leave to Amend Expert Disclosures, wherein plaintiffs sought permission to amend those expert disclosures after full production and evaluation of the discovery defendants should have produced nearly a year prior.

Defendants dilatory conduct did not end with their final document production of

documents on March 25, 2008. Plaintiffs asked to complete the depositions of each of the defendants (except for Melody A. Johnson) on March 14, 2008, providing defendants with seven dates between March 25th and April 4th for completion of those depositions. Counsel for defendants responded by indicating that either the deponents or the attorney covering the depositions would not be available until the first week of May. The parties concluded the last of those requested depositions on May 16th, coincidentally (or not), the same day defendants filed their instant motion for leave to amend.

The only reason given by defendants for their delay of 18 months in seeking to amend their Answer is "oversight." In an attempt to justify this alleged oversight, counsel for defendants indicates that "[t]he undersigned counsel was not the attorney who initially represented them and who answered the Complaint." Yet, defendants' current lead counsel entered his appearance in this case on December 6, 2007, almost six months prior to seeking leave to amend defendants' Answer.

**The Prejudice to Plaintiffs**

Now, after the completion of all but one of defendants' depositions, after plaintiffs have provided their expert disclosures, and after the completion of virtually all written discovery, defendants seek leave to assert a defense which they should have asserted on November 17, 2006.

As the travel of this case clearly indicates, defendants' dilatory tactics unduly prejudice plaintiffs. Plaintiffs have not had an opportunity to conduct discovery on, or otherwise plan for, a Qualified Immunity defense when preparing this case for trial. Defendants claim that leave to amend their Answer will not prejudice plaintiffs and that "[t]he Affirmative Defense of Qualified Immunity does not require any additional discovery or even additional facts." That is simply wrong.

In addition to developing evidence to support the allegations in the Complaint, plaintiffs framed their discovery based in substantial part on defendants' initial Answer and the defenses asserted therein. Plaintiffs' interrogatories, document requests, deposition strategy, and expert disclosures all took place without the benefit of knowing that someday, on the whim of defendants, plaintiffs would have to contest a defense seeking to absolve most of the defendants of their individual responsibility for the needless death of a twelve year old girl.

To claim at this stage of the litigation that a newly asserted defense of Qualified Immunity would not prejudice plaintiffs is poppycock.

**Legal Position**

Defendants seek to amend their Answer to assert a defense which should have bene asserted on November 17, 2006. They should not be allowed to do so.

Defendants themselves cite authority showing that leave to amend should only be granted in "the absence of...undue delay, bad faith or dilatory motive...[and] undue prejudice to the opposing party..." Defendants' Memorandum, p. 4, citing Foman v. Davis, 371 U.S. 182 (1962). In fact, the Court in Colemenares v. Sun Alliance Ins. Co., 807 F.2d 1102 (1st Cir. 1986), the second case cited by defendants, denied leave to amend on the grounds of undue prejudice.

Given the history of this litigation, the timing of defendants' request to assert a Qualified Immunity defense is, at best, suspect. The First Circuit Court of Appeals recognizes that:

> "Because immunity defenses may be raised at several different stages of a case, the potential for abuse is substantial...the right to assert an immunity defense must be balanced with the district court's obligation to ensure the 'just, speedy, and inexpensive determination of cases'...With these considerations in mind, we have recognized that district courts may be justified in rebuffing pretrial attempts to assert immunity defenses if those attempts

> are not undertaken with a reasonable degree of diligence." Torres v. Puerto Rico, 485 F.3d 5, 10 (1st Cir. 2007), citing Guzman-Rivera v. Rivera-Cruz, 98 F. 3d 664, 668 (1st Cir. 1996).

Moreover, the First Circuit has held that the right to assert an immunity defense is not "absolute" and not "a trump card that may be held in reserve until a defendant sees fit to play it..." Unger v. Palestine Liberation Organization, 402 F.3d 274, 293 (2005).

Under circumstances similar to those here, other federal courts have denied leave to amend in order to assert a Qualified Immunity defense. For example, in Metro Produce Distributors v. City of Minneapolis, 473 F.Supp.2d 955 (D.Minn. 2007), the Court denied defendants' motion for leave to assert a Qualified Immunity defense after the close of discovery, finding that "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." Id. At 964, quoting Archer Daniels Midland Co. v. Aon Risk Servs. Inc. Of Minn., 187 F.R.D. 578, 582 (D.Minn. 1999)(other citations omitted). The Metro Produce court also found that "[t]he defense of qualified immunity is fact intensive and Plaintiff has not been given an opportunity to conduct discovery on this issue because Defendants failed to plead this defense in a timely manner." Id.

Metro Produce is not an isolated example. See, e.g., Justice v. Town of Blackwell and Jennie Henkel, 820 F.2d 238 (7th Cir. 1987)(leave to file amended answer to assert Qualified Immunity defense 14 months after initial answer denied); Lampley v. Cox, 836 F.2d 550 (6th Cir. 1987)(leave to amend answer to assert Qualified Immunity defense denied).

Defendants in this case are now attempting to play their own Qualified Immunity "trump card." Plaintiffs contend they should not be allowed to do so.

## CONCLUSION

This Court should deny the Motion of Defendants for Leave to Amend Defendants' Answer to the Complaint.

Dated: June 2, 2008

/s/Michael W. Long_______________
Michael W. Long, No. 5455
Attorney at Law, P.C.
Attorney for Plaintiffs
640 George Washington Highway
Lincoln, RI 02865
(401) 333-0310/(401) 333-0311 Fax

## CERTIFICATE OF SERVICE

To:

Kevin F. Mchugh, Esq.
City of Providence-Law Department
275 Westminster Street, Suite 200
Providence, RI 02903

I hereby certify that I electronically filed this Memorandum In Support of Plaintiffs' Objection to the Motion of Defendants for Leave to Amend Defendants' Answer on the 2nd day of June, 2008. This Memorandum is available for viewing and downloading from the Court's Electronic Case Filing system. Service on the above identified counsel of record will be effectuated by electronic means and by mailing first class mail, postage prepaid, to non-registered parties.

/s/Michael W. Long
Michael W. Long